UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

MARK G. CARRICO,

    Plaintiff,

v.

PRINCE GEORGE'S COUNTY
GOVERNMENT, OFFICE OF CENTRAL
SERVICES, FLEET MANAGEMENT
DIVISION,

    Defendant.

Civil Action No. TDC-17-0822

## MEMORANDUM OPINION

Plaintiff Mark G. Carrico has filed this action against Defendant Prince George's County Government, Office of Central Services, Fleet Management Division ("the County") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 (2018). Pending before the Court are the County's Motion for Summary Judgment and its Motion for Leave to Exceed Limitation on Length. Having reviewed the filings, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the County's Motions will be GRANTED.

## BACKGROUND

### I. Termination and Appeal

In 1983, Carrico was hired by the Fleet Management Division ("FMD") of the Prince George's County Office of Central Services ("OCS") as an Equipment Mechanic II. He voluntarily left the position in 1988. Carrico returned to FMD as an Equipment Mechanic I/II in 2001. In 2005, he was promoted to the position of Equipment Mechanic III.

In 2009, the County Executive for Prince George's County notified the County's Office of Human Resources Management ("OHRM") that the County was facing a budget deficit and was contemplating layoffs. As part of the layoff process, OCS was given a target dollar amount to cut from its budget. OCS provided OHRM with a list of the categories of work that could be reduced with the least possible disruption. Based on that list, OHRM began to identify employees within these categories to lay off by calculating employees' retention scores, a process which took into account, among other things, length of service and performance evaluations. Carrico was laid off on November 1, 2009.

Two weeks later, Carrico appealed his termination to the County's Personnel Board. He argued that his retention score had been calculated incorrectly. On September 1, 2010, the Personnel Board ruled that Carrico's termination had been lawful. Carrico appealed that ruling to the Circuit Court for Prince George's County, Maryland, and on July 12, 2011, that court vacated the Personnel Board's decision on the ground that the Board had provided inconsistent statements on the burden of proof. On January 27, 2012, on remand, the Personnel Board ruled that Carrico's termination had been unlawful because his retention score had been calculated incorrectly. The Board ordered that Carrico receive $49,000 in back pay and $11,800 in attorney's fees.

## II. Re-Employment and Retirement

During the pendency of his termination appeal, in August 2010, Carrico was rehired into FMD. Although he was hired as an Equipment Mechanic II instead of an Equipment Mechanic III, he received the same salary that he had received before his termination and had his benefits restored. In the fall of 2011, Carrico sought but was denied a promotion to the position of Master Equipment Mechanic. According to Carrico, he applied for and was denied multiple other promotions.

2

On January 21, 2011, Carrico suffered a back injury while on duty. The next day, he made a verbal report of the injury to his supervisor, which he considered to be a worker's compensation claim. An official report was not made until February 8, 2011. On February 3, 2011, however, Carrico was placed on "no duty" status. Joint Statement of Undisputed Facts, Mot. Summ. J. at 9, ECF No. 54-1. He returned to work on light duty on March 14, 2011. At that time, Carrico asserts, he was assigned to sit in a corner of the machine shop to perform clerical duties, and his co-workers were told not to interact with him. He also asserts that he was denied training opportunities. Carrico was eventually approved for back surgery, which occurred on April 2, 2012. He remained on Family and Medical Leave Act leave until August 2, 2012 and did not report back to work until September 6, 2012.

On April 5, 2013, Carrico was involved in an incident at work. He got into an argument with the Garage Supervisor, George Hardesty, during which Hardesty asked him why he had called in sick on April 3 and Carrico argued that he was being overworked. After Carrico used foul language to convey that he was tired of being mistreated, he left the garage for the day. Two co-workers reported that on that day Carrico mentioned needing to buy an assault rifle, an allegation that Carrico has denied. On April 8, 2013, Carrico was placed on administrative leave pending an investigation of the incident. Carrico was then referred for a fitness for duty examination consisting of a psychological assessment by the psychiatrist for the Prince George's County Medical Advisory Board. The psychiatrist concluded that Carrico was not fit for duty. The County also conducted an investigation of the incident and eventually proposed to fine Carrico as a disciplinary action, but no fine was ever assessed against him.

On June 12, 2013, Carrico applied for disability retirement benefits, which were granted. Although he was ordered back to work on August 20, 2013, he voluntarily retired on disability on September 1, 2013.

## III. Procedural History

On April 18, 2013, Carrico filed with the United States Equal Employment Opportunity Commission ("EEOC") and the Prince George's County Human Relations Commission a Charge of Discrimination ("the EEOC Charge"). In the EEOC Charge, Carrico alleged that from October 5, 2009 to October 2, 2012, he was retaliated against when he was forced to undergo new hire orientation after being re-hired in 2010, when he was not restored to his prior position of Equipment Mechanic III, and when he did not receive promotions for which he had applied. On December 20, 2016, the EEOC mailed Carrico his right-to-sue letter.

On March 24, 2017, Carrico filed his Complaint in this Court, asserting claims of retaliatory hostile work environment under Title VII; discrimination on the basis of age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 (2018); and discrimination on the basis of disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12217. The County filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. After a hearing on February 14, 2018, the Court dismissed the two discrimination claims but allowed the retaliatory hostile work environment claim to proceed. In its oral ruling, the Court stated that it appeared that Carrico could not demonstrate that he had participated in protected activity as required to establish a retaliation claim, but the Court declined to rule on that issue as the parties had not briefed it. After discovery, the Motion for Summary Judgment followed.

# DISCUSSION

## I. Motion for Leave to File Excess Pages

On the day that it filed its reply brief, the County filed a Motion for Leave to Exceed Limitation on Length, in which it requested permission to exceed by three pages the page limit on its reply brief. As grounds, the County referenced the extensive nature of discovery and the complexity of the issues presented. Where Carrico has not opposed the request, the motion will be granted.

## II. Motion for Summary Judgment

In its Motion for Summary Judgment, the County argues that much of the activity of which Carrico complains took place outside the statutory limitations period, that Carrico failed to exhaust administrative remedies, and that Carrico's retaliatory hostile work environment claim fails as a matter of law. Because the Court concludes that the County is entitled to summary judgment on the merits of the retaliatory hostile work environment claim, it need not address the County's other arguments.

### A. Legal Standard

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit

under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### B. Retaliatory Hostile Work Environment

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). A retaliation claim brought under this statute follows a burden-shifting framework analogous to the discrimination framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973):

> [A] plaintiff bears the initial burden of establishing a prima facie case of retaliation. Once this burden is carried, the burden shifts to the defendant, who is obliged to articulate a legitimate, non-retaliatory justification for the adverse employment action. If the defendant carries this burden, the onus is on the plaintiff to then demonstrate that the non-retaliatory reason advanced by the defendant is a mere pretext.

*EEOC. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005) (internal citations omitted); *cf. McDonnell Douglas*, 411 U.S. at 802-04.

To establish a *prima facie* case of retaliation, a plaintiff must present facts that establish that (1) the plaintiff engaged in a protected activity; (2) the employer took a materially adverse action against the plaintiff; and (3) "there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (citation omitted). "Protected activity" consists of having "opposed any practice made an unlawful employment practice" under Title VII or having "participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3; *see Netter v. Barnes*, 903 F.3d 932, 937-38 (4th Cir. 2018). Employment practices made unlawful by Title VII are those that discriminate against employees on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a) (delineating

6

unlawful employment practices under Title VII). To have engaged in protected activity, a plaintiff's opposition must be to an employment action that the plaintiff "reasonably believed . . . constituted a Title VII violation." *Netter*, 908 F.3d at 937-38.

Claims of retaliation for opposing employment practices prohibited by the ADA or the ADEA, although arising under separate statutes, *see* 29 U.S.C. § 623(d) (ADEA retaliation); 42 U.S.C. § 12203(a) (ADA retaliation), follow the same analysis as Title VII retaliation claims. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192-93 (3d Cir. 2015) (holding that retaliation claims under the ADEA and Title VII are subjected to identical analysis); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001) ("We analyze a retaliation claim under the ADA using the same framework employed in Title VII cases."). To the extent that Carrico asserts retaliation claims under the ADA or the ADEA, they rise and fall alongside his Title VII retaliation claim.

As to the second factor, the United States Court of Appeals for the Fourth Circuit has found that the creation of a hostile work environment can constitute a materially adverse action for purposes of a retaliation claim. *See Von Gunten v. Maryland*, 243 F.3d 858, 869-70 (4th Cir. 2001) ("Retaliatory harassment can constitute adverse employment action."), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006); *Fordyce v. Prince George's Cty.*, 43 F. Supp. 3d 537, 552 (D. Md. 2014) ("Retaliation claims under Title VII can be based on an employer's retaliatory creation of a hostile work environment.") (citing *Von Gunten*). A plaintiff has been subjected to a hostile work environment when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

To satisfy the third factor, the plaintiff, while not required to establish that the protected activity was a but-for cause of the adverse action, must make "some showing" of causation, such as demonstrating that the "employer either understood or should have understood the employee to be engaged in protected activity" and that "the employer took adverse action against the employee soon after becoming aware of such activity." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 214 (4th Cir. 2019).

If the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to show a legitimate, non-retaliatory reason for the adverse action. *See Navy Fed. Credit Union*, 424 F.3d at 405. If the defendant makes such a showing, the burden then shifts back to the plaintiff to show that the stated reason was "a mere pretext" for retaliation. *Id.*

Here, there are two potential instances of protected activity that could give rise to a retaliation claim: Carrico's 2009 appeal of his termination and the 2013 EEOC Charge. The Court addresses each separately.

### 1. Termination Appeal

In both his Complaint and his memorandum in opposition to the County's Motion for Summary Judgment ("Opposition"), Carrico argues that his 2009 appeal of his termination constituted protected activity and that he was subjected to a hostile work environment in retaliation for that appeal. However, the County argues both that the appeal did not constitute protected activity and that the retaliatory conduct Carrico alleges does not rise to the level of a hostile work environment.

The County is correct that Carrico's termination appeal did not allege any form of discrimination covered by Title VII, the ADEA, or the ADA. All of the evidence relating to Carrico's termination appeal establishes that it raised issues regarding the proper calculation of his

retention score for purposes of application of the County's layoff policy, not unlawful discrimination under federal law. Indeed, the argument presented by Carrico's attorney in the 2010 appeal before the Personnel Board dealt only with the contents of Carrico's personnel file, the calculation of his retention score, and whether his position should have been subject to termination in the first place, with no claim of discrimination based on any protected class. The initial Personnel Board decision on appeal likewise focused on the calculation of Carrico's retention score and the propriety of the termination decision process under the personnel provisions of the Prince George's County Code, without referencing any claim of discrimination. On appeal to the Circuit Court for Prince George's County, Carrico again focused on whether personnel procedures were followed, including as to the burden of proof and the calculation of Carrico's retention score, with no claim of discrimination. Then on remand, the second Personnel Board decision narrowly addressed the calculation of Carrico's retention score. Because there is no evidence that Carrico's termination appeal, at any stage, involved "opposing discrimination practices in the workplace," *Perkins*, 936 F.3d at 213, there is no genuine issue of material fact whether his appeal constituted protected activity. It did not.

Moreover, the actions that Carrico claims were taken in retaliation for his termination appeal do not rise to the level of a hostile work environment. Establishing a hostile work environment claim involves showing that "the workplace is permeated with . . . intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto*, 786 F.3d at 277. The determination whether such an environment exists includes a consideration of "the frequency of the [harassing] conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

9

performance." *Id.* In contrast, "callous behavior by . . . superiors," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), or "a routine difference of opinion and personality conflict with [a] supervisor," *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000), are insufficient to establish a hostile work environment.

In his Opposition, Carrico sets out a lengthy list of actions that he claims were taken in retaliation for his termination appeal, including: a delay in the delivery of the backpay he was awarded by the Personnel Board; the failure to reclassify him as an Equipment Mechanic III; the repeated refusal to promote him or to offer him proper training opportunities; a failure to maintain his positive performance evaluation records; a delay in reporting his workplace injury and in providing him appropriate treatment; the refusal to provide him with a reasonable accommodation for his injury after he returned to work and instead isolating him in a work room and directing his co-workers not to speak with him; the confrontation with Hardesty on April 5, 2013 and the subsequent fabrication of violent threats that he allegedly made that day; and the referral of Carrico to the psychiatrist who determined that he was not fit for duty. Even if arguably retaliatory, these actions, which largely consist of unfavorable personnel actions, do not constitute a hostile work environment. In *Perkins*, for example, the Fourth Circuit held that a plaintiff who was denied promotions, given less favorable shifts and benefits, and shunned and ignored by co-workers was not subjected to a hostile work environment. *Perkins*, 936 F.3d at 208-09. Significantly, the vast majority of the actions identified by Carrico are not qualitatively the type of conduct that would constitute a component of a hostile work environment. With the possible exception of the isolation of Carrico as he handled paperwork after his injury and his confrontation with Hardesty, none of the alleged actions could be deemed to consist of the type of "intimidation, ridicule, [or] insult" that characterize hostile work environments. *Boyer-Liberto*, 786 F.3d at 277; *see Perkins*, 936

F.3d at 209 (considering whether the conduct was "physically threatening or humiliating"). The Court therefore finds no genuine issue of material fact whether Carrico was subjected to a hostile work environment. The Court will grant the Motion to the extent that Carrico's retaliatory hostile work environment claim is based on his termination appeal.

        2.      **EEOC Charge**

To the extent that Carrico is also asserting that he was subjected to a hostile work environment in retaliation for filing the EEOC Charge in 2013, that argument also fails. To be sure, the filing of an EEOC charge of discrimination is, by statute, protected activity. *See* 42 U.S.C. § 2000e-3 ("It shall be an unlawful employment practice for an employer to discriminate against any . . . employee[] . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."). However, Carrico has failed to produce evidence to establish a genuine issue of material fact whether he was subjected to a hostile work environment in retaliation for filing the EEOC Charge. The only actions he identifies that postdate the filing of the EEOC Charge on April 18, 2013 are those relating to the investigation of the April 5, 2013 incident, which included the referral of Carrico for a psychological assessment and a proposed fine against him that was never imposed. This investigation of workplace conduct and the subsequent taking of arguably corrective action did not constitute a hostile work environment. *See Dortch v. Cellco P'ship*, 770 F. App'x 643, 645 (4th Cir. 2019) ("Dortch's supervisor's investigation into her team members' dissatisfaction with her and his subsequent decision to place Dortch on a performance improvement plan . . . did not create an abusive working environment."); *see also Walls v. Lowe's Home Ctrs., LLC*, 789 F. App'x 852, 855 (11th Cir. 2019) (holding that being subjected to "legitimate work place investigations" did not constitute a hostile work environment). Because Carrico has not produced

any evidence that following the EEOC Charge he was subjected to pervasive "intimidation, ridicule, [or] insult," he has not raised a genuine issue of material fact whether he was subjected to a hostile work environment in retaliation for that filing. *Boyer-Liberto*, 786 F.3d at 277. The Court will therefore grant the Motion as to the retaliatory hostile work environment claim.

## CONCLUSION

For the foregoing reasons, the County's Motion for Leave to Exceed Limitation on Length, ECF No. 56, will be GRANTED, and the County's Motion for Summary Judgment, ECF No. 54, will be GRANTED. A separate Order shall issue.


Date: March 24, 2020 /s/
THEODORE D. CHUANG
United States District Judge

12